# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IRONWORKERS LOCAL UNION NO.
808, IRONWORKERS LOCAL UNION
NO. 808 PENSION FUND,
IRONWORKERS LOCAL UNION NO. 808
ANNUITY FUND, IRONWORKERS
LOCAL UNION NO. 808
APPRENTICESHIP FUND, WADE A.
IVEY, BILLY SHEFFIELD, GREGORY
HOLMES, ALLEN PARKER, BILLY
JOHNS, STANLEY DVORAK, JR.,
SOUTHEASTERN IRON WORKERS
HEALTH CARE PLAN,**

**Plaintiffs,**

**-vs-**                                            **Case No.  6:06-cv-960-Orl-31KRS**

**DE LA PUERTA, INC.,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT (Doc. No. 12)** |
| **FILED:** | **January 18, 2007** |

## I.      PROCEDURAL BACKGROUND.

On July 17, 2006, Plaintiffs Southeastern Ironworkers Health & Welfare Fund (Health & Welfare Fund),  Ironworkers Local Union No. 808 Pension Fund (Pension Fund), Ironworkers Local Union No. 808 Apprenticeship Fund (Apprenticeship Fund), Ironworkers Local Union No. 808 Annuity Fund (Annuity Fund), which are collectively referred to as the "Trust Funds," through Wade A. Ivey, Billy E. Sheffield, Gregory Holmes, Allen Parker, Billy Johns, and Stanley Dvorak, Jr., as Trustees, and Ironworkers Local Union No. 808 (Union), filed a Complaint against Defendant De La Puerta, Inc. (De La Puerta), alleging violation of sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Doc. No. 1. The Complaint was served on the registered agent of De La Puerta on August 29, 2006.  Doc. No. 6.  De La Puerta has not responded to the Complaint or otherwise appeared in this case.

On October 12, 2006, the plaintiffs moved for entry of a clerk's default, doc. no. 7, which the Clerk of Court entered on October 16, 2006.  Doc. No. 8.

Thereafter, the plaintiffs filed the present Motion for a Default Judgment.  Doc. No. 12.  In support of their motion, the plaintiffs filed the following documents:

- De La Puerta's monthly reports of payments to Trust Funds, doc. nos. 12-2 through 12-5;

- a copy of the collective bargaining agreement, doc. no. 12-6;

- a spreadsheet of De La Puerta's outstanding principal balances owed to the Union's funds set out in the collective bargaining agreement, doc. no. 12-7;

- a spreadsheet of De La Puerta's outstanding principal balances owed to the Welfare Fund, doc. no. 12-8;

- •     a spreadsheet of the interest and penalties owed to plaintiffs due to De La Puerta's failure to promptly make payments, doc. no. 12-9;

- •     Declaration of Reasonable Attorney's Fees, by Tobe Lev (Lev Decl.), doc. no. 12-10;

- •     Declaration of Jack Devlin (Devlin Decl.), doc. no. 12-11; and

- •     Declaration of Scott Ernsberger (Ernsberger Decl.), doc. no. 12-12.

The Motion for Default Judgment was referred to me for issuance of a report and recommendation.

## II.    STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the plaintiff's complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must examine the sufficiency of the allegations in a complaint to determine whether a plaintiff is entitled to a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The defaulting defendant does not admit the amount of damages to be awarded. *See Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). The plaintiff has the burden of proving the amount of damages. *Id.* "Damages may be awarded only if the record adequately reflects the basis for the award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam)). A hearing is not necessary if sufficient evidence is submitted to

support the request for damages.  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

The plaintiff has the burden of proving the amount of damages to be awarded.  When the employer has violated its statutory duty to keep adequate records, the employee satisfies this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  *Combs v. King*, 764 F.2d 818, 825, 827 (11th Cir. 1985) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*. (quoting *Anderson*, 328 U.S. at 687-88).  While *Anderson* was a case brought under the Fair Labor Standards Act, in *Combs*, the Eleventh Circuit expressly extended its holding to ERISA cases.  *Id*. at 827.

## III.     RELEVANT FACTS.

> *A.     Allegations of the Complaint Regarding Liability*.

The Health & Welfare Fund is an employee health and welfare benefit plan, the Pension Fund is an employee pension benefit plan, the Apprenticeship Fund is an employee apprenticeship benefit plan, and the Annuity Fund is an employee annuity benefit plan within the meaning of ERISA.  Doc. No. 1 ¶ 2.  Wade A. Ivey, Billey E. Sheffield, Gregory Holmes, Allen Parker, Billy Johns, and Stanley Dvorak, Jr., Trustees of the Pension Fund, the Apprenticeship Fund, and  the Annuity Fund, are authorized by the respective plan documents to bring this action.  *Id.* ¶ 3.  The

Union is an "employee organization" within the meaning of ERISA and a "labor organization" within the meaning of the LMRA. *Id.* ¶ 4. It represents employees in the construction industry, which is an industry or activity affecting commerce within the meaning of ERISA and LMRA. *Id*.

De La Puerta is a Florida corporation engaged in, licensed, and doing business as an ironworker contractor in the Orange County, Florida area. *Id.* ¶ 5. At all times material, De La Puerta was an employer within the meaning of that term under ERISA and LMRA. De La Puerta's principal place of business is located at 5960 Jones Avenue, Zellwood, Florida 32789. *Id.* De La Puerta's activities affect commerce within the meaning of that term under ERISA and the LMRA. *Id.*

At all times material, De La Puerta requested referrals from the Union and hired ironworkers represented by the Union pursuant to collective bargaining agreements. *Id.* ¶ 8. Under these agreements and other written instruments establishing the governing of the Trust Funds, De La Puerta agreed to make payments of employee benefits to the Trusts Funds. *Id*. De La Puerta was to tender employee fringe benefit contributions, related dues, and assessments to the plaintiffs for all of the hours worked, or gross wages earned by the plaintiffs' covered employees, monthly, for every month in which an employee represented by the Union performed work. *Id.*

Pursuant to the parties' agreements, De La Puerta was required to remit timely the fringe benefit contributions, related dues, and assessments, including interest, penalties, collection costs, and attorney's fees accrued therein. *Id.* ¶ 9. Since January 2005, De La Puerta has failed to abide by the terms and conditions of the collective bargaining agreements, including those provisions requiring it to make the contributions. *Id.*

B.      *Evidence of Damages.*

In support of the present motion, the plaintiffs filed the collective bargaining agreement that De La Puerta agreed to follow.  Doc. No. 12-6.  The collective bargaining agreement established the contributions required to be made by De La Puerta to a number of different funds for each hour of work performed by the Union's employees.  *Id*. at 20.  The hourly rate for the plaintiffs' funds was as follows:

| | |
|---|---|
| Ironworkers Local 808 Pension Fund | $2.85 |
| Ironworkers Local 808 Annuity Fund | $2.40 |
| JATC (Joint Apprenticeship Training Committee) | $0.50 |
| Southeastern Regional Welfare Fund | $3.50 |
| Local Union 808 checkoff | 3% of hourly wage |
| CMF (Contract Management Fund) | $0.07 |
| Organizing Fund | $0.16 |
| IPAL (Ironworkers Political Action League) | $0.04 |
| District Council Check Off | $0.02 |
| IMPACT | $0.04 |

*Id.*  The collective bargaining agreement required contributions to be made on the fifteenth day of the month immediately following the month for which payments were earned.  *Id.* at 21.

The plaintiffs also filed the declaration of Jack Devlin.  He is the president and chief operating officer of Advance Administration, Inc., a company that administered the Pension, Annuity, and Apprenticeship Funds.  Devlin Decl. ¶ 1.  Devlin received the monthly reports prepared by De La Puerta, doc. no. 12-2 through 12-5, showing the amount that was paid, or should have been paid, to each of the different funds.  Devlin Decl. ¶ 2.  Part of Devlin's job duties was to calculate any delinquencies owed to the funds.  *Id.*  Devlin avers that there were months in which De La Puerta failed to make a payment or the check that De La Puerta provided was returned due to insufficient funds.  *Id.* at 2.  Based on De La Puerta's monthly reports, a

spreadsheet, doc. no. 12-7, was prepared summarizing De La Puerta's delinquent payments. Devlin Decl. at 2. Devlin avers that De La Puerta owes the Pension, Annuity, and Apprenticeship Funds an amount totaling $70,758.72, which consists of $26,012.58 for the Pension Fund, $23,301.88 for the Annuity Fund, $6,571.47 for the Apprenticeship Fund, $10,530.57 in union dues, $933.69 for the Contract Management Fund, $484.76 for the Ironworker Political Action League, $185.51 for the District Council Checkoff, $2,280.26 for the Organizing Fund Checkoff, and $458.00 for IMPACT.[1] *Id.*

The declaration of Scott Ernsberger was also filed. Ernsberger is an administrator employed by GEMGroup, which administered the Health & Welfare Fund. Ernsberger Decl. ¶ 1. As part of his job duties, Ernsberger oversaw the receipt of the monthly fringe benefit payments made by De La Puerta. *Id.* ¶ 2. Ernsberger avers that in reviewing and processing the monthly remittance forms from De La Puerta, it was determined that De La Puerta owes the Health & Welfare Fund a total of $25,245.85, exclusive of interest, penalties, and attorney's fees. *Id.* ¶ 3. A spreadsheet summarizing the principal amount owed by De La Puerta to the Health & Welfare Fund, doc. no. 12-8, was prepared and filed in support of the present motion. *Id.* ¶ 3.

---

[1] While the payment owed to IMPACT was included within the summary of payments owed by De La Puerta, doc. no. 12-7, it was not included within Devlin's declaration. However, it appears that Devlin included this amount in calculating the total amount owed to the plaintiffs.

**V.      ANALYSIS.**

*A.      Liability.*

The plaintiffs base their ERISA claims on 29 U.S.C. §§ 1132[2] and 1145.[3] In essence,

these provisions state that employers who are obligated by a collective bargaining agreement to

make contributions to a union trust fund must make such contributions in accordance with the

terms of the agreement.  Failure to comply with the provisions of § 1145 constitutes a violation of

ERISA. *Moore v. Amer. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1245 (11th Cir.

2000).

Accepting the factual allegations of the complaint as true, the Trust Funds are fiduciaries of

employee benefit plans covered by ERISA.  De La Puerta is an employer as that term is defined by

ERISA.  De La Puerta agreed through the collective bargaining agreement to make contributions to

the Trust Funds pursuant to the terms of collective bargaining agreements.  De La Puerta is

delinquent in making contributions to the plans as required by the agreements.  These facts are

sufficient to establish that De La Puerta failed to pay contributions as required by § 1145.  Thus,

---

[2] Section 1132(a)(3) provides as follows:

[a] civil action may be brought--by a participant, beneficiary, or fiduciary (A) to
enjoin any act or practice which violates any provision of this subchapter or the
terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress
such violations or (ii) to enforce any provisions of this subchapter or the terms of
the plan.

[3] Section 1145, provides as follows:

[e]very employer who is obligated to make contributions to a multiemployer plan
under the terms of the plan or under the terms of a collectively bargained agreement
shall, to the extent not inconsistent with law, make such contributions in
accordance with the terms and conditions of such plan or such agreement.

De La Puerta is liable for violations of § 1145, and the plaintiffs are entitled to entry of a default judgment.

   B.  *Damages.*

   ERISA provides that when a judgment is entered in favor of a multi-employer plan under § 1145, the court shall award the plaintiffs the following types of damages:

    (A)  the unpaid contributions,

    (B)  interest on the unpaid contributions,

    (C)  an amount equal to the greater of–

      (I)  interest on the unpaid contributions, or

      (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E)  such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

   1.  <u>Unpaid Contributions</u>.

   The plaintiffs have presented sufficient evidence to establish their damages for unpaid contributions.  Based on Devlin's declaration and the relevant spreadsheets, De La Puerta owes the Pension, Annuity, and Apprenticeship Funds an amount totaling $70,758.72.  Based on Ernsberger's declaration, De La Puerta owes the Health & Welfare Fund a total of $25,245.85.

-9-

Thus, De La Puerta owes the plaintiffs a total of $96,004.57 in unpaid contributions.  This amount should be awarded to the plaintiffs.

       2.      <u>Interest on Unpaid Contributions</u>.

Section 1132(g)(3) provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]."  Prejudgment interest is due on each unpaid contribution from the date on which the contribution was due.  *See Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc.*, 948 F.2d 1219, 1223 (11th Cir. 1991).  In the present action, the collective bargaining agreement provides for interest from the first day of the month after the month in which the work was performed, at a rate of 12%.[4]  Doc. No. 12-6 ¶ 14.14.11.2 (3).

The plaintiffs have submitted a spreadsheet, doc. no. 12-9, calculating the amount of interest to which they allege they are entitled based on the 12% interest rate.  The spreadsheet calculates the interest from the third day in the month after the month in which work was performed to December 31, 2006, the last day of the month before the Motion for Default Judgment was filed.  Doc. No. 12-9.  While the calculations are accurate, the amount of prejudgment interest due should be calculated to the date on which the Court enters its judgment.  Accordingly, I respectfully recommend that the Court direct the plaintiffs to calculate the

---

[4] The collective bargaining agreement provides interest from the first day of the fourth month after the month in which work was performed, at a rate of 12%.  Prior to the fourth month, the collective bargaining agreement provides for a lesser interest rate.  In the present action, as it has been greater than four months since all work was performed, the collective bargaining agreement provides for a 12% interest rate.   Doc. No. 12-6 ¶ 14.14.11.2.

prejudgment interest due and submit a proposed judgment as of a date certain to be established by

the Court.

The plaintiffs are also entitled to post-judgment interest.  The federal post-judgment

interest statute provides that "[i]nterest shall be allowed on any money judgment in a civil case

recovered in a district court."  28 U.S.C. 1961(a).

3. <u>Statutory Penalty Provision</u>.

Pursuant to § 1132(g)(2)(C), the plaintiffs are entitled to "an amount equal to the greater of

– (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in

an amount not in excess of 20 percent . . . of the amount determined by the court [for unpaid

contributions.]"  In the present action, the collective bargaining agreement set the amount

recovered as liquidated damages as 8% of the unpaid contributions.  Doc. No. 12-6 ¶¶ 14.14.1.1,

14.14.1.2 (4).  As the plaintiffs are entitled to interest at a 12% rate, the interest rate is higher than

the amount specified as liquidated damages in the collective bargaining agreement.  Thus, the

plaintiffs are entitled to recover double the amount of interest on the unpaid contributions.  This

amount will equal the interest calculated in the previous section, and it is recommended that this

amount be included in the plaintiffs' proposed judgment.

Having obtained the greater of interest or liquidated damages, plaintiffs are not entitled to

liquidated damages.

4. <u>Attorney's Fees and Costs</u>.

The Court must award reasonable attorney's fees and costs of the action to an ERISA plan

that prevails in an action brought under 29 U.S.C. § 1132(g)(2) to recover delinquent payments.

*Carriers Container Council*, 896 F.2d at 1346.  In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983),

the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained."  *Id*. at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'"  *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303).  Thus, the applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and supports the number of hours worked and the rate sought.  *Hensley*, 461 U.S. at 433.  "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303.  Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney.  *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990)).

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorneys' fees.  *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

a.      *Hourly Rate.*

Lev has been licensed in Florida since 1977.  He specializes in labor and employment law.

Lev Decl. ¶ 1.  He seeks an hourly rate of $150.00.  I find that his hourly rate is reasonable, in the

absence of objection, in light of his experience and the work he performed in this matter.

b.      *Reasonable Number of Hours.*

Included in his affidavit, Lev submitted a detailed time statement indicating the work he

performed in this case.  *Id*. at 3.  In the absence of objection, these hours are reasonable.

The lodestar attorney's fees in this case are as follows:

| Attorney | Hourly Rate | Hours | Total |
|----------|-------------|-------|-------|
| Tobe Lev | $150.00 | 7.8 | $1,170.00 |

c.      *Costs.*

The plaintiffs seek an award of costs in the amount of $485.00 for reimbursement for the

filing fee ($350.00), the costs of serving process ($33.00), the cost of serving a subpoena for a

deposition ($25.00), and court reporting fees from a deposition ($77.00).  Lev Decl. at 4-7.  I find,

in the absence of objection, that the plaintiffs are entitled to an award of costs from De La Puerta

in the amount requested.

**VI.     RECOMMENDATION.**

Based on the foregoing, I respectfully recommend that the plaintiffs' Motion for Default

Judgment, doc. no. 12, be **GRANTED**, and that the Court enter judgment against the defendant in

the amount of $97,659.57[5] plus pre- and post-judgment interest.  I further recommend that the

_____

[5] This amount is calculated as follows: $96,004.57 (unpaid contributions) + $1,170.00
(attorney's fees) + 485.00 (costs) = $97,659.57.

Court direct the plaintiffs to submit a proposed judgment with the prejudgment interest calculated as of the date provided by the Court.

I further recommend that the Clerk of Court be directed to enter a judgment consistent with the Order entered on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 11, 2007.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy